| 27 | 287 |
|----|-----|
| 88 | 557 |

| 27 | 287 |
|-----|-----|
| 102 | 508 |
| 27 | 287 |
| e125 | 140 |

| 27 | 287 |
|------|-----|
| e130 | 310 |

</div>

THOMAS THOMAS, plaintiff in error, vs. THE STATE OF GEORGIA, defendant in error.

[1.] Popular excitement alone, not sufficient of itself to postpone the trial of a case, except under extraordinary circumstances.

[2.] If there be not a full panel, the challenge should be made to the array.

[3.] A juror upon his *voir dire*, and in answer to the question, "Is your mind perfectly impartial between the State and the accused?" Answers, "I think that I am, as I understand it." The Court then asks, "do you understand the question?" The juror replies, "yes;" He is an impartial juror, and there is no objection to the mode adopted for testing his indifferency.

[4.] A juror may be disqualified and set aside for cause, on the ground, that he is over age, after the statutory questions have been propounded to him, provided the State has not been prejudiced by the irregularity.

[5.] It is not necessary that the juror should be a citizen of the county, where the offence is tried for any specified time previously. It is enough, if he be a *resident citizen*, at the time of trial.

[6] The Court being satisfied from inspection, that a juror is drunk, may set him aside of its own motion.

[7.] It is no objection, that a traverse jury in a criminal cause is present, and hears the Court charge the grand jury upon the penal laws of the State gen-

erally ; and compliments them upon their vigilance in ferreting out crime, and bringing offenders to justice.

[8.] The practice of separating witnesses in a State case, is ancient and salutary; still it is a matter of discretion with the Courts. And it is no abuse of that discretion, to allow one or more of the witneses to remain in Court, and aid either the State or the accused, in conducting the prosecution or defence; neither does it disqualify a witness from being *re-examined*, that he has remained in the Court room after he was first examined, or that he has stated to another witness, what he had sworn to; although this last, is a misconduct, which might subject him to the punishment of the Court.

[9.] What the defendant says on the spot, within a minute or a minute and a half, or even three minutes after the transaction, is a part of the *res gestae*, and admissible as such in evidence.

[10.] When the behavior of a witness is unbecoming, it is the duty, as well as the privilege of the Court, to reprove him for his indecorum.

[11.] When a witness testifies to a fact, as that the deceased was advancing on the accused when he was killed, he may give the reasons of that opinion.

[12] When the relative position of the several combatants in an affray is material the State may reintroduce a witness examined in chief to prove that it is different from that testified to by the defendant's witnesses, and exhibit to the jury a diagram, illustrative of his statement, and then the defendant to surrebut in the same way.

[13.] When the Court is asked to change a certain principle to be law, provided the evidence sustains it, it is no error in the Court to give the opposite, or other alternative, provided the proof preponderates on that side.

[14.] An outlaw not entitled to the privilege of a new trial.—LUMPKIN, J.

Murder, from Lee county. Tried before Judge ALLEN, January, 1858.

Thomas Thomas, the plaintiff in error, was indicted for the murder of Joseph Cross. He was tried at the January adjourned Term, of Lee Superior Court, and convicted. Whereupon his counsel moved for a new trial, upon the following grounds.

### Grounds for New Trial.

1st. Because the Court refused the motion for a continuance, based upon the grounds of great public excitement against the prisoner, the homicide having been committed on the 5th of December, 1857, and that prisoner having been

confined in jail, had no opportunity to prepare for his trial. The Judge remarks, upon this ground, "that the witness coming into Court, suspended this motion, and it was not again presented."

2d. Because when the second panel of jurors· was put upon the prisoner, one of the jurors was absent, and did not answer to his name when called, and said panel was put upon prisoner, consisting of only forty-seven jurors. The Judge adds, "that the entire list was called over, and the Court remarked, that all the panel had answered, so believing; no objection was made."

3d. Because the name of one of the jurors, (Carlton B. Calloway,) was twice inserted in the panel, thus reducing the number to forty-six. The Judge adds, "It was a mistake, not discovered, the juror answering twice."

4th. Because one of the jurors, upon his *voir dire* in answer to the question, "is your mind perfectly impartial between the State and the accused," said, "I think that I am, as I understand it." The Court then asked him if he understood the question, he answered, "yes." To which prisoner objected.

5th. Because upon one of the jurors, after the statutory questions had been put to him, being put upon the prisoner, counsel proposed to ask him, if he was not over sixty years of age. The Court refused to permit the question to be asked, and the prisoner was forced to exhaust a challenge upon him. The fact being that the juror was over sixty years of age.

6th. Because one of the jurors had not resided in the county six months, and the Court refused to allow prisoner's counsel to examine him upon his *voir dire*, as to this point, until he first objected to the juror, and stated the grounds of his challenge.

7th. Because one of the jurors, upon the suggestion of Mr. Hawkins, of counsel for the State, was set aside by the Court for cause, upon the ground, that he was intoxicated; the

Court first inquiring of counsel for prisoner, if the juror should be set down for cause, and counsel replying, that " the Court can see he is drunk."

8th. Because the Court in the presence of the jury empanneled to try prisoner, in its charge to the grand jury, remarked, among other things, " that almost all the homicides committed in the county, could be traced to the carrying of concealed weapons, and that it was high time that a stop was put to the commission of such offences."

9th. Because after the witnesses were sworn, and by order of Court, were separated, the Court allowed two of the witnesses for the State to remain in Court to assist in the prosecution, and to which prisoner objected.

The Court also, permitted two of prisoner's witnesses to remain to assist in the defence.

10th. Because the Court refused to allow prisoner to prove, by Samuel Lindsey, a witness on the part of the State, that prisoner said, about one minute or a minute and a half after he shot deceased, and as he turned and was leaving the place, that he " wanted witness to protect him," and said that he " had done nothing but what he was compelled to do in self defence." The Court holding it incompetent testimony.

11th. Because counsel for prisoner asked Green Cross, a witness on the part of the State, for what purpose he brought the pistol to town that day, and witness starting to answer what he had understood, when counsel for the State objected to his stating what he had understood, and the Court ruled it incompetent.

12th. Because the Court refused to allow prisoner to prove by the witness, Wilkerson, that prisoner said, from one to three minutes after the shooting, " that he did not intend to shoot deceased, but to shoot W. G. Cross."

13th. Because the Court remarked in the hearing of the jury, to the witness, Wilkerson, who was almost constantly laughing, " that his manner of testifying was very unbecoming, and that the Court was surprised to see him manifest so much

levity in a cause of so much solemnity;" he being a witness for prisoner.

14th. Because the Court refused to allow prisoner to prove by the witness, Morgan, what he, witness, said to deceased, in reply to which deceased said, "I am not after Charley Spence, but am after Jim Spence, the damned Methodist preacher, and Tom Thomas."

15th. Because the Court refused to allow Gill, a witness, to state the facts which led him to believe that deceased and Green Cross were advancing on prisoner, witness having stated that they were so advancing.

16th. Because the Court allowed the State to introduce Sam. Lindsey, in rebuttal, who was the first witness sworn on the part of the State, and had remained in the Court room and heard all the testimony. Prisoner objecting to his re-examination.

17th. Because the Court permitted the witness, Lindsey, upon his re-examination, to make and exhibit a diagram, showing the position of the parties at the time of the shooting. Prisoner objecting that such testimony was not in rebuttal, and that said diagram was incompetent evidence.

18th. Because the Court refused to allow prisoner to prove in reply, that said diagram was incorrect; and also, refused to permit his witnesses to make a diagram, showing Lindsey's diagram to be incorrect. Counsel for prisoner stating that they had intended to have had the witnesses make a diagram, but had unintentionally omitted it. The Court holding that when the prisoner closed, he could introduce no more testimony.

19th Because one of the witnesses for the State, after he had been sworn and testified, related to another witness for the State before he was examined, what he, the first witness, had sworn. "But this was unknown to the Court," adds the presiding Judge.

20th. Because the Court, in the hearing of the jury, and while said trial was pending, in discharging the grand jury stated among other things, that the criminal docket was very

heavy, and on the increase, and it was attributable to their vigilance in bringing offenders before the Court; the only way in which crime can be suppressed.

21st. Because the Court charged the jury, as requsted by prisoner's counsel, "that if the jury should believe that the deceased and Green Cross were acting together in a common purpose, to assault the prisoner, and the assault of either was of such a character as to have aroused the fears of a reasonable man at the time the prisoner shot the pistol, so that the prisoner had good reason to apprehend that his life was in great peril, by reason of such assault, then the law would justify the prisoner in shooting at either assailant;" stating to the jury at the same time, "that he gave it, (the charge) with a qualification, that would be stated in the subsequent charge," but which the Court failed to do.  (*See charge.*)

### Charge of the Court.

If you believe from all the evidence that the prisoner held the pistol in a threatening position, against or towards Joseph Cross, the deceased, and that Green Cross, a son of the deceased, seeing the danger of his father, drew a pistol and attempted to shoot the prisoner, that circumstance is no justification of the prisoner for shooting at either of the Crosses; if you should be satisfied from the evidence, that the prisoner had gone there, engaged in the contest, and had drawn his pistol in a spirit of revenge, and not in his own defence to save his own life or upon deliberation.  If you are satisfied from the evidence, that the prisoner did kill Joseph Cross, then it is no justification to him, that Joseph Cross did commence the conversation with Charles Spence, which led to the quarrel; or, that Joseph Cross, the deceased, some two weeks before, or longer or shorter, had drawn his gun on him, the prisoner; unless the prisoner at the time, did not act with deliberation, or in the spirit of revenge, but in good faith or on the fear of a reasonable man, that unless he did shoot, he would lose his own life.  But if the shooting, whether he

shot at the one Cross or the other, was done by him in a spirit of revenge, or with deliberation, that is if prisoner went there with his pistol, prepared to shoot, and for the purpose of shooting, and not to defend himself or to protect his own person, the killing was murder, and not manslaughter or justifiable homicide.

22d. Because the Court charged the jury as requested by counsel for the prisoner, "That if at the time the prisoner shot, he was under the necessity of shooting to protect his own life, he is not responsible for the consequences resulting from such an act." Which charge he said he gave with a qualification, hereafter to be given, which qualification he never gave. (*See charge.*)

23d. Because the Court charged the jury as follows: that if they are satisfied from the evidence, that prisoner did kill Joseph Cross, then it is no justification to him, that Joseph Cross did commence the conversation with Charles Spence, which led to the quarrel; or, that Joseph Cross, the deceased, some two weeks before, or longer or shorter, had drawn his gun on prisoner; unless the prisoner at the time, did not act with deliberation, or in the spirit of revenge, but in good faith or on the fears of a reasonable man, that, unless he did shoot, he would lose his own life. But if the shooting, whether he shot at the one Cross or the other, was done by him in a spirit of revenge, or with deliberation, that is if prisoner went there with his pistol prepared to shoot, and for the purpose of shooting, and not to defend himself or to protect his own person, the killing was murder, and not manslaughter, or justifiable homicide.

24th. Because the jury found contrary to law.

25th. Because the jury found contrary to evidence.

26th. Because the jury found contrary to the charge of the Court.

27th. Because the Court charged the jury as follows: That it was their duty to reconcile the testimony if there be any conflicting, and ascertain the truths therefrom; in doing

so you will look to all the facts and circumstances shown by the proof, the testimony of each witness, and his manner of testifying.

The Court refused the motion for new trial, and counsel for prisoner excepted.

WARREN & WARREN; STROZIER & SMITH; VASON & DAVIS, for plaintiff in error.

Sol. GEN. and HAWKINS, *contra.*

*By the Court.*—LUMPKIN, J. delivering the opinion.

The defendant being convicted of murder moved for a new trial on twenty-seven grounds. His application being refused he prosecutes his writ of error to this Court, to reverse the judgment.

[1.] There was a motion made to continue the cause, and we infer, for the record is somewhat obscure upon this point, that it embraced two grounds, to wit: 1st. The popular excitement preventing the prisoner from having a fair trial; and 2d. The absence of witnesses. Pending the motion the witnesses came in; and there seems to have been no formal decision by the Court upon the other ground. As the trial was directed to proceed, we will assume in favor of the prisoner, that it was overruled.

This Court has never in any case held, that public excitement alone, was sufficient of itself to entitle the accused to a postponement of his cause. There might possibly be a case which would authorize and require it. The presiding Judge thought that this was not such a case, and we are not disposed to control his discretion.

[2. and 3.] As to the next two objections, as to the empanneling of the jury, we think they came too late. The defendant was furnished with a list of the jurors, and if the panel was not full, he should·have challenged the array on that account. He was himself in laches. Besides, this was

Thomas vs. The State.

not the first, but the second panel, and it is not clear under the Act, that any subsequent panel after the first, might not suffice, although less than forty eight.

[4.] We see no error as to the mode of testing the impartiality of the juror, John E. Ward. And we are clear, that he showed himself qualified by answers, to serve as a juror.

[5.] Can a juror be disqualified from non-age or being over age, after the statutory questions have been asked him ? The Act of 1856, would indicate that objections of this sort should be previously made, and had any injury in this case resulted to the State, from not following the directions of the Act, we might hold that the challenge came too late. Otherwise, we are not prepared to say, that should the defect be discovered after the statutory questions have been propounded, as that a juror is not a free white citizen, that he is a minor, idiot, &c., that advantage might not be taken of it at any time. It being conceded, then, that the juror, Elbert Nichols, was over sixty, we think the objection was good when made, and that the Court erred in not allowing it. *Pamphlet* 1856, *p.* 230.

[6.] By the Act of 1856, it is not necessary that the juror should have been a citizen of the county, where the offence is tried, for any specified time. It is enough, that he is a *resident citizen* at the time of the trial. *Ib.* We consequently hold that Ennis was a competent juror.

[7.] The Court being satisfied from inspection, that Jeremiah Bentley was drunk ; and counsel for the prisoner, (Judge Lott Warren,) not disputing the fact, he was properly set aside by the Court for cause.

[8.] The eighth assignment is, " because on Monday morning last, the jury having been empanneled to try the said cause, was present in the Court room, and heard the Court charge the grand jury on the penal laws of the State, in which charge the Court elaborated strongly against crime, saying, amongst other things, that almost all the homicides committed in the county could be traced to carrying conceal-

ed weapons; and that it was high time that a stop should be put to the perpetration of such offences." Well, what of that? The crowd that press into the Court House at the opening of the session, and the two petty jury panels, hear the regular charge on Monday morning; and it is from these by-standers, and the two petty juries, that traverse juries are selected to try offences. And whoever supposed that this constituted a ground of exception?

[9.] "Because, after witnesses for the State were sworn, prisoner asked and required of the Court to have them separated. Then prisoner's witnesses were sworn, and counsel for the State asked to have them separated. All of which the Court directed to be done. Counsel for the State then requested that W. G. Cross and Samuel Lindsey, witnesses for the State, and John G. Brown, a witness for the defendant, might be permitted to remain in Court to aid State's counsel in the prosecution. And this was allowed; and defendant by his counsel excepted." The Court adds, that "two of prisoner's witnesses were suffered to remain to assist in the defence."

We see no error in this assignment. For notwithstanding the practice of separating witnesses, may be very old, certainly as ancient as the trial of Susanna by Daniel, (*Apocrypha, History of Susanna, 52 verse;*) and very good, as it proved itself to be on that occasion; confounding her guilty accusers and vindicating her innocence. Still, it is but a rule of the Court, and must in its enforcement be left very much to judicial discretion. We see no abuse of that discretion in this case. The part that the witnesses, W. G. Cross and Lindsey bore in this examination, will fully sustain our opinion.

[10.] We think the Court erred in not allowing the witness, Samuel Lindsey, to testify to the sayings of prisoner, a minute or a minute and a half after the shooting. If the declarations were not a part of the *res gestae*, then nothing is;

and all that Courts and text writers have said upon this vexed subject, is meaningless, 11, *Ga. Rep.*, 621; 22 *ib.* 228.

[11.] This assignment is abandoned. As it stands, the Court unquestionably ruled right. Counsel state that it is miscopied, and that the decision was exactly contrary to what is written.

[12.] We think the declarations of the defendant, as testified to by James W. Wilkerson, made from one to three minutes after the shooting, to the effect, that he shot at Wm. G. Cross, the son, and not Joseph Cross, the father, should have been admitted. The father was nearer the prisoner than the son. Some of the witnesses depose, that the deceased was not more than a foot and a half from a direct line from Thomas to the son. Thomas was agitated, and fired hastily. Perhaps his fire was drawn by the bursting of the cap of young Cross.

Learned counsel eloquently argue, that the by-standers may have been mistaken, but the pistol was its own best interpreter, and yet we know that it will not do to hold that every man aims at what he hits, or always hits what he aimed at.

[13.] We see nothing wrong or censurable in the reproof administered by the Court to the witness Wilkerson. The dignity and decorum of judicial proceedings must be preserved.

[14.] In looking carefully into the record, we cannot find what Morgan said to deceased in reply to the statement of deceased, that it was Jim Spence and Tom Thomas he was after, and not Charley Spence. We are unable to decide, therefore, whether it should have been admitted or not.

[15.] We think the Court should have allowed the witness, Gill, to state the facts or reasons which induced him to believe, that the Crosses were advancing upon the prisoner, when he shot. They might have demonstrated the correctness of his conclusion.

[16 and 17.] We hold the Court was right in permitting the witness, Lindsey, to be re-examined, notwithstanding he

had remained in the Court-room subsequent to his first examination. And also, in allowing the diagram made by this witness, as to the relative position of the combatants, to be submitted to the jury. It was strictly rebutting proof.

[18.] We are quite clear that the Court erred in refusing to let the defendant bring in Wilkerson, Gill, Morgan, Vernoy, and McLin, to contradict Lindsey's testimony, by making out and exhibiting to the jury another diagram as to the respective attitudes of the parties in this affray. We know of no law which excludes surrebuting testimony, and such was the character of this. If counsel prefer to have their judgments affirmed, let them be cautious how they insist on the rejection of testimony.

[19.] The misconduct of the witness, Martin Williams, in telling Robert A. Rouse, another witness for the State, before Rouse was examined, what he, Williams, had sworn, might justly have subjected him to the punishment of the Court, but is no ground for a new trial. Besides, the Judge certifies that this irregularity was unknown to him.

[20.] The next complaint is, that "while the trial was progressing, and the jury were in the box, on Wednesday evening, while discharging the grand jury, and in the presence and hearing of the traverse jury, trying said cause, the Court stated amongst other things, that the criminal docket was very heavy and on the increase, and that it was attributable to their vigilance for bringing offenders before the Court, the only way in which crime can be suppressed."

There is nothing in this exception. The Court must dis charge all its duties. Besides, what American Judge would hold the office, if he were not allowed to talk? To have his say? And some indulgence especially is to be granted to the habit of a Circuit rather praiseworthily noted for lecturing jurors, in order to stimulate them to a proper execution of the criminal law.

[21.] We see nothing in the charge of the Court which can be considered a qualification of the legal proposition

asked for in the request.  He merely gives the converse also, of the principle, provided the proof preponderates that way, asked for.  Both are correct.

[22.] The next assignment is subject to the same comment.

[24 and 25.] We express no opinion as to the evidence, assuming that the prisoner will have the magnanimity of course, to return and submit himself to a new trial.  *A privilege to which no outlaw should ever be entitled.*  Did this case rest on this ground alone, we might not feel at liberty to withdraw it from the province of the jury.  Although forewarned and dissuaded, he thrust himself into this quarrel. It is not pretended that his relative, old Charley Spence, was in very imminent peril.

[26.] There is nothing in this ground.

[27.] Nor the last.  The Court violated no rule of evidence in the instructions given to the jury.  And even taken in connection with the reproof administered to the witness, Wilkerson, we do not see that his Honor transcended his duty.

<div align="right">Judgment reversed.</div>

McDONALD, J. absent.