Augustus Johnson, plaintiff in error, *vs.* The State of Georgia, defendant in error.

1. This court will not control the discretion of the circuit court on the question of the continuance of a case, unless such discretion has been abused.

2. A charge to the grand jury, on their organization the second week of the court for service during that week, in which they are exhorted to bring offenders to trial and punishment, made in the presence of the traverse jury engaged in the trial of a case for murder, is not ground for the grant of a new trial in such case, though allusion be made, in the charge to the grand jury, to the crime of murder, and the indisposition of the people to arrest armed offenders, and though the prisoner on trial was, and had been, so armed at and before his arrest—the judge stating, in said grand jury charge, that he had no allusion at all to the case pending, that the case pending must be tried on its own merits, when his attention had been called to the possible effect of the grand jury charge upon the traverse jury—and

his charge to the traverse jury being perfectly fair and unexception-
able, and unexcepted to.

. `Criminal Law. Practice in the Superior Court. Charge
of Court. Before Judge UNDERWOOD. Floyd Superior Court.
January Adjourned Term, 1877.

Johnson was indicted for murder. When the case was
called for trial, defendant moved for a continuance, on the
following showing: He had only been arrested six or eight
days before; since then, his counsel had been engaged almost
constantly in the court, which was in session, and therefore
unable to give his case due attention. He expected to prove
by one Vann, that he was unarmed at the time of the alleged
shooting; a subpœna had been issued for Vann, but they
had as yet been unable to serve him; it was said that he was
then absent from the county. That he expected to prove
by one Arbor, that the murder was committed by one Jones;
this witness lived near the line of Alabama, or perhaps in
that state. Defendant hoped to have these witnesses present
by the next term of court. The court overruled the motion,
but granted two days to summon witnesses and prepare the
case; he tendered such compulsory process as might be ne-
cessary for that purpose. When the case was again called
for trial, defendant renewed the motion for continuance,
adding to the grounds already stated the statement of his
counsel that they had just learned facts which led them to
rely on insanity as their chief defense; that they had writ-
ten to Bartow county for the record in a case in which the
defendant had been adjudged a lunatic some years before,
but they had not received it; that they also desired time to
summon as witnesses the physicians who had attended him,
they living in Chattooga county. Defendant made an affi-
davit to the same effect. It appeared that Vann had been
brought into court. The court again overruled the motion,
but said he would furnish any required number of bailiffs to
go after witnesses in Chattooga and Bartow counties; that,
it being then Friday, and the trial likely to last several days,

he would order it to begin; and if the evidence on hand were exhausted before Saturday night, he would order an adjournment until Monday morning, which would give time to secure the presence of the record and witnesses desired. At the trial, it appears that all the witnesses who were shown to be residents of the state were present, or their presence voluntarily waived. The record of the inquisition of lunacy was also present, and used in evidence. The judge added these facts to the usual certificate to the bill of exceptions; also that Vann was present, but not introduced by defendant.

The other facts necessary to an understanding of the points decided, will be found in the opinion.

WRIGHT & FEATHERSTON; DABNEY & FOUCHE; W. T. WOFFORD, for plaintiff in error.

C. T. CLEMENTS, solicitor general, for the state.

JACKSON, Judge.

The defendant shot a colored man engaged in managing a flat across the Coosa river, without scarcely the shadow of provocation. His principal plea was insanity. After an impartial trial he was found guilty. No motion was made for a new trial, but the ruling of the court on two points was excepted to, and on these exceptions the case is brought before us.

1. A motion was made to continue the case on the grounds set forth in the record. The court refused to continue for the term, but laid the case over for two days, giving counsel unlimited control of officers of court to bring the witnesses in. When called again, the motion to continue was renewed especially because the plea was insanity, and proceedings in Bartow county in a case *de lunatico inquirendo*, and witnesses in said case, were not in court. The court again refused to continue, but granted its full powers to the defendant to send for witnesses and procure the proceedings during the trial. It appears that the proceedings in the lunacy case

were in evidence on the trial, and the witnesses brought in —at least all who were in the state. The homicide had been committed a year or so prior to the trial, but the defendant was arrested and confined in jail only a few days before.

While the court, if presiding on the case at *nisi prius*, might have granted the continuance, yet that is peculiarly a matter for the presiding judge; and inasmuch as we cannot say that the discretion was abused in the case at bar, we decline, in accordance with the uniform ruling of this court from its organization to the present time, to interfere.

2. The only other exception to the conduct of the court is that in the charge the judge gave the grand jury in the presence of the traverse jury, which was then engaged in the trial of this defendant, he animadverted generally and strongly upon the fact that crime was rampant in the county, and that people were averse to arrest offenders who committed murder, and then armed, rode over the county and defied the law. The precise circumstances under which the charge was given were these: The case had continued over to the second week of court, when a new grand jury was to be organized. On Monday, the pending case not being at an end in the examination of the witnesses, the court completed that branch of the trial; and having finished the examination of the witnesses on the next morning—Tuesday—before the argument began, the presiding judge organized the grand jury for the week and proceeded to charge that body on their duties—the traverse jury remaining in the other box. In the course of the charge, he said, among other things, wherein he inveighed against crime in general, "that the sympathy which had once existed among our people, had in some degree ceased to exist; our people had suffered so much from the war and its results, and were making such struggles to reinstate themselves, that it would seem they did not much care what was done if not done to them or their property; if a man was to commit murder on Broad street, there are many people who would not go a quarter of a mile to arrest him;

men ride about the county armed, with shot guns and pistols, setting the laws at defiance, and committing crime with impunity. It behooves the good people of the county to set their face against the crime, to enforce the laws and put down crime."

The solicitor general having heard some remark of defendant's counsel, that the charge might affect improperly the traverse jury, suggested it privately to the court; when the judge said, " that nothing he had said to the grand jury was intended to have the slightest application to the case on trial—that case would be decided on its merits, and the evidence and the law applicable to it."

Exception is taken, that notwithstanding the disclaimer of the judge, the charge to the grand jury might have improperly affected the traverse jury, to the damage of the defendant on trial; and it seems to be predicated mainly on the fact that the defendant had been armed with a shot gun and pistols, and had defied arrest, and evidence to that effect was before the traverse jury.

It might have been better that the circuit judge had directed the traverse jury to their room before he delivered this charge to the grand jury; but in the busy and shifting scenes of a circuit court, engaged in the discharge of many and varying duties, it is not easy to manage every thing with that nicety and harmony which courts removed from such duties might desire. The judge had postponed the organization of his grand jury for the second week, all of Monday—not wishing, it appears, to break in upon the trial of this important case until the evidence was closed. So soon as this was accomplished, on Tuesday forenoon, he proceeded to organize the grand jury, and delivered the charge. If he had waited till the whole case was closed—argument and charge and all—it is probable that important business before the grand jury, would have been neglected. So he proceeded regularly with the work of the court, and if there be any impropriety at all in his conduct it was the omission to send out the traverse jury. The charge to the

grand jury was proper. It was right to exhort them to put down crime. That is their business as the grand inquest of the county, and the only criticism that can be made upon the whole affair is that the judge spoke in presence of the traverse jury, and painted a class of offenders, to which this defendant seemed to belong.

But all this was done in general terms, and what was particularized was at quite a different place from where this offense was committed; for it was committed at a crossing of the Coosa, ten miles from Rome, and the supposed case of the judge was in Broad street, Rome. The moment the attention of the judge was called to it, he disabused the minds of the traverse jury, and grand jury, and all present, of any impression which might have been made unfavorable to the defendant, and put that case where it belonged—on the law and evidence applicable thereto. We cannot think that Johnson was at all hurt by what was said to the grand jury—especially with the explanation and disavowal then publicly given by the judge.

At the close of the argument, the judge charged the traverse jury fully and fairly on the whole law of the case—certainly without the slightest evidence of bias to the state or against the prisoner; so much so, that no motion, even, has been made for a new trial—no exception at all taken to the charge; and none, indeed, could be taken, as it seems wholly unexceptionable. No point is made upon the admission or rejection of evidence, and no ruling, from beginning to end of the trial, complained of, except the refusal to grant the continuance and the charge to the grand jury, in presence of the traverse jury.

Whilst it might have been freer from cavil, had the court sent the special jury to their room before he inveighed against crime, and the manner of high-handed criminals in resisting arrest, we cannot see that the defendant was injured thereby—especially when we consider the court's disclaimer made immediately, the whole trial, and the unexceptionable charge. The evidence is overwhelming, both

as to the *factum* of the murder and the sanity of the defendant; and we do not feel authorized, as a reviewing court, to arrest the regular course of legal administration and to remand the case for further investigation. See 27 *Ga.*, 287.

Judgment affirmed.