## MOON vs. THE STATE OF GEORGIA.

1. When the panel of jurors is put upon the prisoner, he should challenge the array for any cause which would go to show that it was not fairly or properly put upon him. If he fails to do so, it appearing that a full panel, answering to their names, have been put upon him, it will then be too late to object to the array because the name of one of the jurors had been incorrectly written on the list.

(*a.*) If upon discovering the error in entering the juror's name, by consent the question thus raised be submitted to the court, his decision as a trior is final, and will furnish no ground for a new trial.

2. A diagram illustrating the scene of the crime, having been proved by witnesses to be correct, was admissible. That witnesses for the defence denied its correctness, did not render it inadmissible. The defendant could introduce a diagram in accordance with their testimony if he so desired.

(*a.*) That certain lines on the diagram were drawn in 'red ink did not render it objectionable, as calculated to inflame the minds of the jury.

3. The bullets extracted from the body of the deceased, when properly identified, were admissible in evidence.

4. It is not competent to prove the conclusions of a witness from facts, without stating them.

5. When a new trial is asked on the ground of partiality in a juror, the *onus* is on the movant to show such fact. A juror so attacked may sustain his competency, and the decision of the court on such conflicting testimony will not be reversed unless decidedly wrong.

(*a.*) Especially will the position of a juror in regard to a case not be a ground for new trial where it was known to counsel for the defence before the trial.

6. A charge that drunkenness could be looked to, to ascertain and determine the condition and state of defendant's mind, and throw light upon the question of the existence of malice, was fully as favorable to the defendant as the court could give.

7. To kill by using a deadly weapon in a manner likely to produce death, will raise a presumption of intention to kill.

8. Positive testimony outweighs negative testimony, the witnesses being equally credible.

9. A definition of malice in the language of the Code was not error.

10. The eleventh ground is controlled by the sixth head-note above.

11. A ground for new trial abandoned in this court will not be considered.

12. Where an affidavit presented on the hearing of a motion for a new trial was not sworn to in form, but was followed by another affidavit of the same person which practically verified it, there was no error in considering it.

13. The verdict was sustained by the evidence.

Criminal Law.   Jurors.   Practice in Superior Court.

Evidence. Presumptions. Practice in Supreme Court. Before Judge HARRIS. Carroll Superior Court. October Term, 1881.

Moon was indicted for the murder of J. D. Ward. On the trial, the evidence for the state was, in brief, as follows:

The defendant cherished ill feeling against the deceased on account of some previous misunderstanding between them. On January 4th, 1881, he purchased a shot-gun and ammunition, and made threats to several parties that he intended to kill Ward. On the evening of January 4th, between sundown and dark, he was at the house of one Robinson when Ward, accompanied by one Stevens, came along a path in front of Robinson's gate. Defendant, taking his gun from his shoulder, called out to them to halt and tell their names; they did not at first answer, and he again demanded to know who they were; they answered "Stevens and Ward;" he said, "All right, your friend;" thereupon they went up to him, Ward being a little in the rear of Stevens; upon seeing Ward near at hand, defendant cursed him and stated that he would kill him; on being asked why, he said, "Ward had acted a God damned rascal." Ward thereupon seized defendant's gun; the latter, struggling slightly, told him to turn it loose. Ward asked if it was loaded; defendant replied in the negative, and again demanded that he should turn it loose. Ward asked, "If I turn it loose, will you let me alone?" Defendant replied, "Yes." Ward then let go the gun, and started to climb over the fence. Defendant walked off about fifteen steps, turned and saying, "God damn you, I will kill you," fired upon him, and from the effect of the shot deceased died in about thirty-six hours. The gun was loaded partly with buck-shot and partly with small shot. After deceased fell, defendant ran up for the purpose of shooting again, but was told not to do so, and desisted. During the struggle over the gun John Robinson, a son

of the owner of the premises, came out of the house with a fire-shovel in his hand, and in the semi-darkness seeing one of the parties shoot the other, he threw the shovel, which struck defendant on the head, inflicting a slight wound. After the shooting, Stevens took the gun from the defendant, and also a pistol which he endeavored to draw, and kept him under arrest until the arrival of the sheriff. Defendant had been drinking for some time, and had not been sober for several weeks before the homicide; and for about a week he had been suffering from attacks of delirium tremens; he boarded at Robinson's house. Ward had a trunk there, and was going to get some tobacco when the difficulty occurred.

The evidence on behalf of the defendant was, in brief, as follows:

Defendant purchased the shot-gun and ammunition for the avowed purpose of hunting; he fired it several times in company with his friends on the road home. While standing near the gate talking to a daughter of Robinson, Stevens and Ward approached; defendant inquired who they were; they replied, "Stevens and brother." He replied, "All right, boys, come on," and turned back to talk to Miss Robinson. Stevens and Ward approached, and the latter seized hold of defendant's gun; defendant said, "John, I thought it was Stevens and brother." Ward replied, "It is a damned lie, and I intend to kill you," and thereupon snapped a pistol in his face; the pistol failing to fire, Ward handed it to Stevens, saying, "Here Jim, take this, I have got one that never fails;" defendant jerked loose from Ward; the latter knocked him down with a stick and started to get over the fence. Defendant said he had been struck with a slung shot; Stevens said no, it was a piece of iron, and calling out, "Hold up, he is going to shoot you," grasped the gun, which defendant had in his hands. Defendant was on his knees at the time from the blows he had received. As Stevens took hold of the gun, it was dis-

charged, and Ward was shot.   After the shooting defend-
ant made no effort to escape, but stayed by Ward until
the sheriff came; defendant then said they were going to
take him to jail, and asked Ward if he desired it; the
latter said, "No."   Defendant's pistol was in the house
during the difficulty.

There was much conflicting testimony concerning the
details of the transaction, statements previously made by
the witnesses and the like, which it is not necessary to
set out here; there was also some testimony on behalf of
the defendant to show previous threats of the plaintiff
to whip and kill him.   The jury found the defendant
guilty ; he moved for a new trial, which was refused and
he excepted.

The grounds of the motion are sufficiently stated in
the decision, except the eleventh and fourteenth, which
were as follows :

(11.) Because the court refused to charge the jury that
they might consider the drunkenness of defendant to
determine the question as to whether the defendant acted
from malice previously entertained, or provocation given
at the time of the rencounter.

(14.) Because on the hearing of the motion for new
trial the state's counsel offered to read in evidence the
affidavit of G. W. Merrell, which was not sworn to, and
defendant's counsel objected to the same.   The court
overruled the objection and admitted the same in evi-
dence, on the ground that the affidavit following was sworn
to by said Merrell.   [This affidavit was concerning the
partiality of one of the jurors.   The record shows a
writing in the form of an affidavit signed by G. W.
Merrell, but without the signature of an officer, in
which the deponent states that he heard a conver-
sation prior to the trial between the juror, Power,
and counsel for defendant, in which Power stated that
he had been summoned on the jury, that he had noth-
ing against the defendant and had heard no evidence
on oath; but if reports were true he had a mighty bad

case ; that he had neither formed nor expressed an opinion, and did not expect to until he heard the evidence on the trial ; that he was prejudiced against the crime of which defendant was accused, and if a bad case was made out against him, he would be in favor of hanging him.

Just below this was an affidavit, duly attested, which read as follows :  " Personally came before me ——————— who, being duly sworn, say that they were present at the time and place alluded to in the affidavit of G. W. Merrell, and that the facts set forth in said affidavit are substantially true, and that D. P. Power made the statements made in said affidavit in substance," etc.   This affidavit was signed by G. W. Merrell.]

J. L. Cobb ; W. P. Cole ; E. B. Merrill ; G. W. Austin ; T. W. Latham, for plaintiff in error.

C. Anderson, attorney-general, by brief ; H. M. Reid, solicitor-general, for the state.

Speer, Justice.

Plaintiff in error was indicted for the offence of murder, of which he was convicted by the jury.   He made a motion for a new trial, which was overruled, and he excepted.

(1.), (2.) The first and second grounds of the motion were, the verdict was contrary to evidence and to law and the charge of the court.

(3.) Because there were not 48 jurors empanelled and put upon prisoner.   It appearing there were 24 jurors of the regular panel and 24 tales jurors.   The name of M. D. Reid appearing as number three of the regular panel, the solicitor general announced there was no such man on the jury ; the man on the jury was named Newton D. Reid ; when his name was called in its order, the court asked counsel for defendant if they would consent that the court might decide the question ; they consented and the court set him aside.   The jury was selected out of the balance of the panel.

Moon *vs.* The State.

(4.) Because the court admitted a diagram of the scene of the homicide, as proved to be correct, in evidence before the jury.

(5.) Because the court admitted in evidence the bullets identified as those taken from the body of the deceased.

(6.) Because the court sustained the objection to the following question propounded by defendant's counsel to William Allen, a witness: "What were your opportunities, and whether your opportunities would have been as good as any other person's to have heard any threat made by Moon?"

(7.) Because one of the jurors, D. P. Power, was at the inquest and witnessed the post-mortem examination, and saw the physician take out the bullets; that he expressed his opinion on the evidence and misled counsel for defendant, and because of his partiality and bias.

(8.) Because the court charged the jury as follows: "If a deadly weapon is used to accomplish the killing, which is likely to produce death in the manner the proof shows it was used, the law presumes the person using it intended to kill."

(9.) Because the court charged the jury as follows: "Express malice is that deliberate intention unlawfully to take away the life of a fellow-creature which is manifested by external circumstances capable of proof, such as lying in wait to do the act, threats, previous grudges, preparation for committing the act on the part of the slayer and acts of similar nature."

(10.) Because the court charged: "Voluntary drunkenness is no excuse for crime, and will not of itself reduce a killing from murder to voluntary manslaughter or any grade of homicide. Yet, it is a fact, that may be proved and looked to, to ascertain and determine the state and condition of the defendant's mind at the time, and to throw light on the inquiry as to whether there was malice or not on part of defendant, in determining as to whether or not

the homicide should be reduced from murder to a lower grade of homicide."

(11.) Refusal to charge (request not in writing).

(12.) Abandoned on argument.

(13.) Because the court charged as follows: " It is the rule that positive testimony is to be believed rather than negative testimony, even when the witnesses are equally credible, that is to say, where a witness says he saw a transaction take place, it is to be believed that the transaction took place, rather than to disbelieve that the transaction took place, because the witnesses say that they did not see it, though they had the same opportunity of seeing it."

(14.) Because, on motion for a new trial, state's counsel offered and read in evidence the affidavit of G. W. Merrell, which was not sworn to, and defendant's counsel objected to the same; the court admitted the same in evidence on the ground that the affidavit following was sworn to.

1. The record shows that the panel of jurors put upon the prisoner consisted of twenty-four jurors of the regular panel and twenty-four tales jurors. So that the error assigned in the third ground of the motion is not sustained by the record. It is true, that one of the jurors upon the regular panel was entered by the name M. D. Reid, instead of his real name, Newton D. Reid. It was the duty of the prisoner, when the panel of jurors was put upon him, to challenge the array for any cause going to show that it was not fairly or properly impanelled, or ought not to be put upon him. So that the court could then determine the sufficiency of the challenge at once. Code, §4680.

But he having failed to do this, if it should appear that there was a full panel answering to their names put upon the prisoner, it is too late to object for this cause to the array, because one of the juror's names has been incorrectly entered on the list, and which is discovered thereafter.

It has been held by this court that it is no ground for new trial that the panel put upon the prisoner does not number forty-eight, if he does not object at the time the panel is put upon him. 22 *Ga.*, 546. If there be not a full panel the challenge should be made to the array. 27 *Ga.*, 287.

The prisoner having consented that the court might decide the question of the competency of the juror appearing under a misnomer, his decision as trior in a criminal case, upon the question of fact submitted to him as such, is final and conclusive; and cannot be ground of motion for new trial. 27 *Ga.*, 287, 289, 294; 47 *Ib.*, 598.

2. There was no error in admitting the diagram drawn to illustrate the scene of the homicide. Witnesses familiar with the locality testified as to its correctness, and if the witnesses for the defence did not agree as to its accuracy with the witnesses for the state, it was the privilege of the counsel for the prisoner to have one prepared in accordance with their testimony, and submit the same to the jury in rebuttal. Neither do we see any objection to the diagram, " because the part of it was drawn in red ink as suggestive of the bloody deed, and as calculated to inflame the minds of the jury." The scene and circumstances attending this terrible tragedy in the simple recital of the eye-witnesses is presented in colors of deeper stain than the mere sketches of red lines or other figures upon the diagram exhibited.

3. The bullets taken from the body of the deceased on a post-mortem examination, identified as they were, were also admissible. They were the voiceless, yet nevertheless significant, evidences of the intent that prompted the slayer when he fired the fatal shot.

4. The question objected to and ruled out by the court as set forth in the sixth ground of the motion, propounded to the witness, Allen, was incompetent, since it sought from the witness his opinion and conclusions of facts about which he had not testified. Code, §3867. Hopkins' Penal Laws, 633.

5. As to the competency of the juror, Power, on the ground that he was at the inquest and witnessed a part of the post-mortem examination, and also that he had expressed himself soon thereafter " that he would hang the prisoner if on the jury ;"—while it may be true he was at the inquest, there is no proof in any of the affidavits submitted to impeach his competency as a juror that he heard one word of the testimony taken on said inquest. The juror himself most positively denies by his affidavit that he saw the crime committed, or heard any part of the evidence delivered on oath, or had from either of these causes formed and expressed any opinion as to the guilt or innocence of the accused ; but states that his mind was brought to a conclusion of prisoner's guilt after he was sworn and heard all the evidence. That he had no bias or prejudice resting on his mind. That he had spoken freely in the presence of the prisoner's counsel before he was taken on the jury, and warned them that he was in favor of capital punishment ; that he told them if he was taken on the jury his mind was impartial—if innocent he would acquit defendant, if guilty convict him, and that he never expressed himself to any one as to the guilt of the prisoner except in that qualified way. It is a well settled rule that a juror whose integrity and competency is thus assailed after verdict may vindicate himself by affidavit. 7 *Ga.*, 143. And when the assault is thus made, it is but just that the juror may be heard in his own vindication, and when so heard the court will stand in the position of a trior, and if he should pronounce him, from all the proofs submitted, a competent juror, it will be no sufficient ground for new trial, unless there was decided error in the judgment so pronounced. 7 *Ga.*, 143; 15 *Ib.*, 223. Even loose remarks made by a juror before he is sworn work no disqualification if they are explained after trial by affidavits and he is shown to be impartial. 60 *Ga.*, 258. Moreover, when the competency of a juror for partiality is assailed after verdict, the burthen is upon the one who attacks him ; all

the presumptions of law are in favor of his competency. 18 *Ga.*, 343; 19 *Ib.*, 123.

After carefully examining the affidavit submitted to the court below on this issue, and when the record shows that the juror freely communicated his views to the counsel for prisoner several days before the trial, in full accord and harmony with those set forth in his affidavit, which is not denied by the counsel, but sustained by the affidavits of other witnesses who were present, we are not prepared to hold that the court below erred in overruling this ground of the motion. On such an issue of competency of a juror, great deference is properly due from a reviewing court to a judge before whom such a trial is had, and who sees or hears the witnesses and looks upon the surroundings of such an investigation.

6. The charge of the court upon the subject of the drunkenness of the prisoner, as complained of in the eleventh ground of the motion, was fully as favorable to defendant as he could expect. The rule laid down : " That drunkenness could be looked to, to ascertain and determine the condition and state of the defendant's mind, and thus throw light upon the inquiry whether there was malice on the part of the defendant in the perpetration of the act charged," was fully as far as any decision on this point has extended in behalf of a party on trial. *Malone vs. State*, 49 *Ga.*, 211 ; and even this has been since questioned by more recent decisions. 59 *Ga.*, 174.

7. As to that portion of the charge of the court complained of in the eighth ground of the motion, to-wit : " If a deadly weapon is used to accomplish the killing which is likely to produce death, in the manner the proof shows that it was used, the law presumes the person using it intended to kill." The objection made to this portion of the charge is that the court therein expressed an opinion on the proof submitted.

Wrested from the context of the charge, it would at first blush seemingly bear such a construction. But these same

words, used just as here set forth in the case of *Hanvey vs. State*, at the present term, were held by this court not to be error in a charge as there given. The court was instructing the jury generally as to legal presumptions arising or flowing from certain acts. The judge said: " If a deadly weapon is used to accomplish the killing which is likely to produce death, in the manner the proof shows it was used, then the law presumes," etc. By this he instructed the jury that the mere use of the deadly weapon to accomplish the killing would not raise the presumption the accused intended to kill; but one further fact must appear, he must use it in a manner also likely to produce death. The proposition was a two-fold one: first, the deadly weapon must be used with intent to kill, and secondly, in a manner to kill. To strike one a blow with a knife (a deadly weapon) closed, would not raise a legal presumption of intention to kill, and yet one might so strike wishing to kill. Yet if he struck with a knife open, then it would be used in a manner to kill, and being with a deadly weapon, the legal presumption would be, he intended to kill. Up to this part of the charge no application of the general principles he was submitting had been made to the case at bar, and therefore no reference to the proof in the case could have been intended as complained of in this ground of the motion.

8. We see no error in the charge on the effect of positive and negative testimony, as it is set forth and assigned as error in the thirteenth ground of the motion, but the same was correct as given. 14 *Ga.*, 55, 62 ; 27 *Ib.*, 649 ; 42 *Ib.*, 474 ; 12 *Ib.*, 213.

9. The charge complained of in the ninth ground is in the language of the Code, and was not error.

10. There was no error in refusing the charge asked for in the eleventh ground; the charge on the subject of drunkenness was given as fairly and liberally as the law warranted.

11. The twelfth ground is abandoned.

12. There was no error in considering the affidavit of Merrell on the motion, it was practically verified by the superadded affidavit attached, and which was sworn to by him.

13. Having thus disposed of all the grounds except those statutory grounds of the verdict being contrary to law and evidence, etc., we do not deem it necessary to enlarge upon these. The picture of this bloody drama, as presented by this record, reveals no ground of palliation for the enormity of this offence. If the testimony is reliable, this murder was committed with a premeditation and preparation that makes it wilful murder. The gun is purchased; deadly loads of bullets procured, threats made, and purposes disclosed, until the tragedy is consummated by deliberately shooting his victim as he was retiring from him unconscious of his peril and unaware of offence given. If this is not murder, the crime is unknown to the criminal jurisprudence of our state.

Judgment affirmed.