The opinion of the Court was delivered hy
Pociiii, J.
Appealing from a sentence of death, on a conviction for murder, the defendant alleges, through hills of exception, numerous irregularities in his trial, which we shall consider seriatim.
1. He charges error in the appointment of J. G. Hawks, Esq., as Judge ad hoc, in the place of the District Judge, who had recused him *383 self for the reason, that previous to his election, as Judge, he had been of counsel for the State in this case.
The complaint is, that J. W. Montgomery, Esq., having been first appointed, and having acted as Judge ad hoe, and having subsequently resigned the trust, the court had erred in appointing Hawks, a resident of Madison Parish, but should have appointed some District Judge of an adjoining District, to try the case.
Under Act 40 of 1880, which is the law regulating the recusation of District Judges, and the mode of trial of reeused cases, no attorney can. be compelled to accept the trust, or to continúe in the discharge of the duties after haviug once accepted, nor does the law require that the attorney appointed as Judge ad hoe, be a resident of the Parish in which the case is tried. He must have the qualifications of a Judge of the District Court in which the recused case is pending. J. G. Hawks, Esq., being a lawyer, otherwise qualified, and a resident of Madison Parish, which is included in that District, was competent to discharge the duties of Judge ad hoe in the case, and hence there was no error in liis appointment.
The complaint of the accused of the refusal of the Judge to grant him a continuance is not well founded, under the circumstances of this case, which had already been tried, and had been remanded from this Court, and in which three successive continuances had previously been obtained, on account of the absence of the very witness whose absence was made the ground of the motion for the continuance which was refused. The circumstances under which the motion was overruled, subject the question to the rulings recently made by this Court in the following eases: State vs. Fulford, 33 A. 681; State vs. Hoonsley, same, 1111; State vs. Fisher, same, 1344.
3. The Judge did not err as charged, in allowing one of the State witnesses to remain in the courtroom after he had testified, and after the Judge had ordered all the witnesses in the case to be separated.
All orders touching the separation of witnesses, are matters peculiarly within the discretion of the Judge, with which the Appellate Court will not interfere: 27 Ga. 287; Bishop on Criminal Procedure, 2d Ed., Vol. I, Secs. 1086, 1087 and 1088.
4. The accused next complains of the ruling of the Judge in admitting proof of the statements of the deceased, touching the person who had shot him, immediately after he had been shot, to a witness who had heard the shot, and the cry of the deceased, and had hurried to the spot which he reached about two minutes after the shooting, but not in the presence of the accused.
After considering several authorities on this point, we have reached *384 tlie conclusion that this declaration was properly admitted in evidence as part of the res gestae. Com. vs. M. Pike, 3 Cush. (Mass.) 181; Roscoe’s Crim. Evidence, p. 24; Waterman’s Digest, pp. 288, 361, 362 and 364.
5. Tlie next error charged has reference to the admission in evidence of the confession of the accused, made under the following circumstances :
Immediately after the homicide, which had caused great excitement in the Parish, the accused had crossed over in the State of Mississippi, at a distance of about 15 miles, where he was captured at a house in which he was spending the night, a short time before day, by a body of eighteen or twenty men, well armed, but not authorized by any requisition to make the arrest in Mississippi, nor sworn officers of the law, who immediately hound the accused, a hoy about 18 years of age, by tying a rope around his arms and around his neck, and at once began, their march towards Carroll Parish.
During the journey, the accused, after being warned that his statements touching the homicide might he used against him on his trial, made a confession of his guilt, which he repeated after he and his captors had reached the Parish of Carroll.
• We cannot conceive how it can he maintained that a confession made under those circumstances, is a free and voluntary confession, within tlie meaning of the numerous adjudications of our own as well as of the1 Courts of our sister States, on this important question.
The fact that the rope around tlie arms of the accused had been removed when he made the confession, unaccompanied by proof that the rope had been removed from his neck, is not sufficient to remove the irresistible impression that the accused, in the hands of a large body of armed ipen, who liad taken him from the bed in which lie was asleep, had tied him by the arms, put a rope around his neck, was not, and could not he in a state of mind under which he could make a free and voluntary confession of guilt, uninfluenced by fear or not alarmed by tlie dread of his numerous captors.
We have examined and fully considered the numerous authorities relied on by the Attorney General in support of the admissibility in evidence of confessions made by prisoners while in custody of officers, while in jail, and even when in irons, but we have found no cases, and have no hesitation in asserting that none can he found, justifying the admission of the proof of a confession of guilt made by a young captive while in the hands of a hostile body of armed men, not known to him as officers of the law, and with a rope around his neck, and we shrink from the responsibility of establishing such a dangerous precedent.
*385 The ruling of the Judge on this iioint was erroneous, and manifestly to the great injury of the accused, and hence the case must he remanded.
It is, therefore, ordered, that the verdict of the jury he set aside, and the judgment of the lower court reversed, and that this case he remanded to the District Court for further proceedings.